# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LATRINA COX, individually, and as Guardian Ad Litem of COWELTI OSBORNE, a minor,<br><br>Plaintiffs,<br><br>vs.<br><br>CLARK COUNTY SCHOOL DISTRICT, a Political Subdivision of the State of Nevada, Clark County; THERON I. SWAINSTON MIDDLE SCHOOL; NORMA PIERCE, individually; EDWARD PFEIFFER, individually, and in his official capacity; and DOES I through X, inclusive,<br><br>Defendants. | Case No.: 2:05-cv-0928-RLH-PAL<br><br>**O R D E R**<br><br>(Motion for Summary Judgment–#18; Countermotion for Partial Summary Judgment–#21) |

Before the Court is Plaintiffs Latrina Cox ("Cox") and Cowelti Osborne's ("Osborne") **Motion for Partial Summary Judgment on 42 U.S.C. § 1983 Liability** (#18), filed December 8, 2006. The Court has also considered Defendants Clark County School District ("School District"), Norma Smith ("Smith") f/k/a Norma Pierce, and Edward Pfeiffer's ("Pfeiffer") Opposition (#19), filed December 21, 2006, and Plaintiffs' Reply (#20), filed January 4, 2007.

AO 72
(Rev. 8/82)

Also before the Court is Defendants' **Countermotion for Partial Summary Judgment** (#21), filed December 21, 2006. The Court has also considered Plaintiffs' Opposition (#22), filed January 4, 2007, and Defendants' Reply, filed January 19, 2007.

## BACKGROUND

The instant litigation arises from a haircut given to Plaintiff Osborne, a then-11-year-old special needs student[1] at the Theron I. Swainston Middle School ("Middle School"), by his teacher, Defendant Smith. Daily and for two weeks prior to the haircut, Osborne consistently asked Smith to cut his hair. Initially, Smith declined and told Osborne that he needed to get permission from his mother, Plaintiff Cox. However, on the date of the incident, Osborne told Smith that his mother consented to the haircut but left his mother's permission note at home. When Smith offered to call Cox for her permission, Osborne replied that she was not home. Apparently content with Osborne's explanation, Smith proceeded to cut Osborne's hair.

Osborne's haircut took place in Smith's classroom and in front of other students. The students were making fun of Osborne during his haircut, the details of which are not explained in the record. Admittedly by all Parties, the haircut was less than satisfactory to Osborne. Smith is not a trained hairdresser and her only experience comes from cutting her husband's hair, which she performs every few weeks. In an attempt to fix Osborne's hair, another student took the clippers from Smith and cut his hair some more, but it did not help. Thereafter, Osborne put on a hat to cover up his hair; however, Defendant Pfeiffer, Vice-Principal of the Middle School, made him remove it because it violated school policy. Embarrassed by his haircut and unable to wear a hat, Osborne ate lunch in the classroom for two days, away from other students.

Regarding her role in the haircut, Smith admitted that she should not have cut Osborne's hair. She made no excuses for her behavior and testified that her only intention was to help Osborne because he was one of her favorite students and she cared about him as a student.

---

[1] The extent of Osborne's special needs are not made clear in the record, other than that Osborne suffers from a severe learning disability.

Further, she admitted that she should have obtained Cox's express permission and that her conduct violated School District policy. Prior to beginning her teaching position at the school, Smith received training on appropriate teacher conduct, which included a document titled "Ten Risky Behaviors" that warned teachers that they should not touch students. Though the training session did not test a teacher's comprehension of the materials, Smith testified that she was familiar with the School District's policies and procedures. For her conduct, the School District formally disciplined Smith by placing an admonishment letter in her file for three years for her lack of judgment in the incident.

Following these events, Plaintiffs brought the instant litigation. Through the current motion, Plaintiffs move for summary judgment on their Seventh, Eighth and Ninth causes of action, all of which are § 1983 claims. Defendants move for summary judgment on the same causes of action in addition to the following: First (assault and battery); Second (false imprisonment); Fourth (negligent training); and Fifth (intentional infliction of emotional distress).

**DISCUSSION**

**I. Summary Judgment Standard**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view all facts and draw all inferences in the light most favorable to the non-moving party. *Shaw v. Santa Monica Bank*, 920 F.Supp. 1080, 1083-84 (9th Cir. 1996) (citations omitted).

1   Once the moving party satisfies the requirements of Rule 56, the burden shifts to
2   the party resisting the motion to "set forth specific facts showing that there is a genuine issue for
3   trial." *Anderson*, 477 U.S. at 256; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The non-
4   moving party "may not rely on denials in the pleadings but must produce specific evidence,
5   through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME*
6   *Hosp., Inc.*, 929 F.2d 1404, 1409 (9th Cir.1991), and "must do more than simply show that there is
7   some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*
8   *Corp*, 475 U.S. 574, 586 (1986).

**II. Section 1983 Claims**

    **A. 42 U.S.C. § 1983**

Both Plaintiffs and Defendants move for summary judgment on Plaintiffs' § 1983 claims.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . .

42 U.S.C. § 1983.

To maintain a successful § 1983 action, a plaintiff must establish the following two elements: (1) the conduct complained of must have been committed by an individual acting under the color of law; and (2) the conduct must have subjected the plaintiff to a deprivation of constitutional rights. *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984).  Here, there is no dispute that the first element is satisfied; Smith, as a public school teacher, was acting under the color of law.  Therefore, the Court discusses only whether Osborne and Cox have been deprived of their constitutional rights.

    **B. Plaintiff Osborne**

Plaintiffs assert violations of the Fourth and Fourteenth Amendments on behalf of Osborne because "[Osborne] had a right to be free from being seized by Smith without due process

1  and then having his hair cut in front of his classmates while they jeered and teased him."
2  (Pls.'Mot. Summ. J. at 13.)  Further, they assert that the fact that Osborne is a special needs
3  student adds to the offensiveness of Smith's action, thereby giving rise to a constitutional
4  violation.  For the following reason, the Court finds no constitutional violations.

5        Plaintiffs ground their allegation that Osborne had a right to be free from being
6  seized by Smith in both the Fourth and Fourteenth Amendment. (Pls.' Mot. Summ. J. at 9)
7  ("[Osborne] was restrained in violation of the Fourth and Fourteenth Amendment.) However, the
8  Fourth and Fourteenth Amendment cannot be simultaneously applied. *See U.S. v. Lanier*, 520
9  U.S. 259, 272 (1997) ("if a constitutional claim is covered by a specific constitutional provision,
10 such as the Fourth . . . Amendment, the claim must be analyzed under the standard appropriate to
11 that specific provision, not under the rubric of substantive due process."). Because Plaintiffs assert
12 that Smith "seized" Osborne, the Court proceeds under Fourth Amendment analysis. *County of*
13 *Sacramento v. Lewis*, 523 U.S. 833, 843 (1998).

14       Under Fourth Amendment analysis, the Court finds that Plaintiffs have failed to
15 show that Osborne was in fact seized.  While baldly asserting that Smith seized Osborne, Plaintiffs
16 cite to no facts in the record to support their allegation.  They have not shown that (1) Smith used
17 physical force or show of authority, *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968), (2) that Osborne
18 reasonably believed he was not free to leave, *California v. Hodari D.*, 499 U.S. 621, 628 (1991),
19 or that (3) Smith terminated Osborne's movement through "means intentionally applied," *Browser*
20 *v. County of Inyo*, 489 U.S. 593, 597 (1989). Further, nothing in the facts indicate that a
21 reasonable jury could find that Smith was seized, as by all accounts, Osborne consented to Smith
22 cutting his hair.  *See* discussion *infra* Sections III, IV.

23       Regarding Plaintiffs' Fourteenth Amendment claims, there exists no basis in the
24 law, of which the Court is aware, that can suggest that a teacher's giving of a haircut at the
25 student's persistent requests rises to the level of a constitutional violation.  While Plaintiff
26 attempts to frame this issue as a Fourteenth Amendment violation, the Court finds this argument

AO 72
(Rev. 8/82)

5

misplaced. In support of their Fourteenth Amendment argument, Plaintiffs rely on *Martin v. Davison*, 322 F. Supp 318 (W.D. Penn. 1971), which held that a person does have a limited constitutional right under the Fourteenth Amendment to determine his own appearance and hairstyle. Specifically, the *Martin* court held that a school regulation that arbitrarily restricted the length of boys' haircuts was unconstitutional. *Id.* at 325. While the Court certainly agrees that Osborne would have a protected liberty interest in remaining free from an unreasonable school regulation on how to style his hair, such a situation is not presented here. The record does not reflect, nor do Plaintiffs argue, that Osborne's hairstyle violated any school policy or regulation or that he was prohibited from wearing his hair in a certain manner.

Neither was Osborne's liberty right to be free from interference with bodily integrity violated, as Plaintiffs assert. The cases involving this right in the school context generally involve such acts as excessive force in punishment, corporal punishment, or sexual assault. *Doe v. Dep't of Educ.*, 334 F.3d 906 (9th Cir. 2003) (excessive corporal punishment); *Plumeau v. Sch. Dist. #40*, 130 F.3d 432 (9th Cir. 1997) (sexual assault); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 719 (6th Cir. 1996) (high school physical science teacher and soccer coach verbally abused a student, held her chin with one hand and admittedly slapped her across the face "perhaps harder than he meant," holding: "While [the teacher] should reasonably expect to face serious consequences for his treatment of [plaintiff], those consequences should not be found in a federal court through the mechanism of a section 1983 action."). The case at bar does not come close to rising to the level of harm or malice illustrated in the foregoing cases so as to give rise to a constitutional violation.

For these reasons, the Court grants summary judgment in favor of Defendants on Plaintiffs' Seventh cause of action.

**C. Plaintiff Cox**

Plaintiffs bring a constitutional claim for violation of Cox's Fourteenth Amendment right to the society, companionship and management of her child. As Plaintiffs explain, the Ninth

Circuit allows a parent to recover for the loss of these rights. *Kelson v. City of Springfield*, 767 F.2d 651, 654 (9th Cir. 1985) (citing *Lassiter v. Dep't of Soc. Serv. of Durham County, N.C.*, 452 U.S. 18, 27 (1981)). While correctly stating the general rule of law, Plaintiffs fail to assert how, in this particular instance–namely, the cutting of Osborne's hair–rises to the level of a constitutional deprivation of Cox's rights.

First, Cox has not been denied the society and companionship of Osborne. The cases cited to by Plaintiffs on this point are distinguishable because the facts of those cases present more egregious conduct than presented here, such as the alleged wrongful death of a relative or physical removal of a family member from the home. *See e.g., Byrd v. Guess*, 137 F.3d 1126 (9th Cir. 1998); *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000); *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365 (9th Cir. 1998); *Santosky v. Kramer*, 455 U.S. 745 (1982). Second, the Court finds no correlation between a child's haircut and his or her ability to provide society and/or companionship to a parent, such that a reasonable jury could find for Cox on this claim.

Neither has Cox been denied management of her child. Cox has not been subjected to state mandates as to how she should raise her child. As discussed above, there is no policy or procedure asserted by Plaintiffs that has attempted to unreasonably limit their constitutional rights. Perhaps aware of these pitfalls in their argument, Plaintiffs further assert that the alleged injury to Cox should not be the focus of this Court's inquiry.

Plaintiffs argue that rather than looking at the alleged injury, the Court should look to the degree of the familial relationship that was affected, citing *Hutson v. Bell*, 702 F. Supp. 212 (E.D. Ill. 1998) for support. While it is true that *Hutson* states that a "jury must determine the degree to which the relationship has been affected," the *Hutson* court relied on an Arizona Supreme Court decision wherein the Arizona court held that no meaningful distinction can be drawn between death and severe injury where consortium is concerned where a child suffered severe, permanent brain injury. *Hutson*, 702 F. Supp. at 214 (citing *Frank v. Superior Court*, 722 P.2d 955, 957 (Ariz. 1986)). Though the Court agrees that the degree of familial relationship is

7

1  important, it is not a substitute for showing an actual deprivation of constitutional rights. The
2  Court can find no legal support on which a reasonable jury could find that Cox's constitutional
3  rights were violated as a result of her son receiving a haircut from his teacher, notwithstanding the
4  fact that the haircut was given without parental consent.
5      Accordingly, summary judgment is granted in favor of Defendants on Plaintiffs'
6  Eighth cause of action.

**D.  Defendant Clark County School District**

8      Plaintiffs seek to hold the School District municipally liable for their alleged
9  constitutional violations on the theory that it was the "policy, practice and custom of Clark County
10 School District to negligently hire, train and supervise its employees, teachers and/or agents."
11 (Compl. ¶ 42.)  For liability to attach, four conditions must be satisfied: "(1) [the plaintiff]
12 possessed a constitutional right of which he was deprived; (2) that the municipality had a policy;
13 (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and
14 (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt v. Pearce*, 954
15 F.3d 1470, 1474 (9th Cir. 1996) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)).
16     As outlined above, neither Osborne nor Cox suffered any deprivation of their
17 constitutional rights for which the School District can be found responsible. Thus, the first
18 element of Plaintiffs' municipal liability claim cannot be met. As a result, the Court need not
19 discuss the remaining elements. Summary judgment is therefore granted in favor of Defendants on
20 Plaintiffs' Ninth cause of action.

**III.  Assault and Battery**

22     Defendants move for summary judgment on Plaintiffs' claim for assault and
23 battery. Plaintiffs allege that Smith "wilfully, maliciously, without just cause or provocation,
24 assaulted and battered [Osborne] by placing [Osborne] in front of the class and cutting his hair
25 with clippers." (Compl. ¶ 11.) In defense, Defendants argue that Osborne consented to the
26 haircut, thereby providing a complete defense to the intentional tort. *See Steen v. Gass*, 454 P.2d

AO 72
(Rev. 8/82)

94, 96 (Nev. 1969) (citation omitted). Consent requires an appreciation of the "nature, extent and probable consequences of the conduct consented to." *Davies v. Butler*, 602 P.2d 605, 612 (Nev. 1979) (adopting Restatement (Second) of Torts § 892A (1979)).

Plaintiffs argue that Osborne did not have the required capacity to consent because of his status as an 11-year-old special needs student. The Court is dissuaded. A child or person with a diminished mental capacity can give effective consent so long as he or she understands the "nature, extent and probable consequences of the conduct consented to, *although the consent of a parent, guardian, or other person responsible is not obtained or expressly refused*." (Pls.' Reply at 3) (citing Restatement (Second) of Torts § 892(A)(2), cmt. 2 (1979)) (emphasis added.) Plaintiffs, however, attempt to refute that a child or one of a diminished mental capacity can consent by arguing that applying such logic would allow minors to consent to the following: entering into contracts, joining the armed forces, having sexual relations with whomever they want, drinking alcohol, and voting. (Pls.' Reply at 4.) Adopting Plaintiffs' interpretation of consent would effectively strip minors and those with diminished mental capacity of ever making their own decision. That is not the law. So long as Osborne, a minor with a learning disability, can be found to have understood the "nature, extent and probable consequences of the conduct consented to," he will be found to have given effective consent. *See Davies*, 602 P.2d at 612.

Here, nothing in the record reflects that Osborne's learning disability is so disabling as to prevent him from understanding the simple nature of a haircut. In fact, the evidence is contrary to such a finding. It is undisputed that Osborne asked Smith repeatedly over a two week period to cut his hair. On the day of the haircut, Osborne went so far as to tell Smith that his mother gave permission for the haircut, which Cox states that she did not give. The seeking out of a haircut, and the alleged lying to obtain it, indicates that Osborne understood the "nature, extent and probable consequences" of receiving a haircut. Further, nothing in the evidence indicates that Osborne changed his mind about the haircut at any time, even as Smith began cutting.

Next, Plaintiffs appear to find support for their argument in the fact that Smith admitted that she should have obtained Cox's permission. However, this admission does not negate Osborne's consent. As stated by Plaintiffs by way of their citation to the Restatement, consent can be effective despite the lack of consent from one's parent. (Pls.' Reply at 3) (citing Restatement (Second) of Torts § 892A, cmt. 2.) And last, Plaintiffs state that Osborne was emotionally affected by this situation and that Pfeiffer admitted that Smith's conduct was offensive to Osborne. The Court finds Plaintiffs' argument misplaced. Osborne's emotional state after the haircut could not have had any effect on his initial consent.

For these reasons, the undisputed facts show that Osborne consented to the haircut. Summary judgment is therefore granted in favor of Defendants on Plaintiffs' first cause of action.

**IV. False Imprisonment**

Defendants also move for summary judgment on Plaintiffs' false imprisonment claim against Smith. Under Nevada law, an individual is liable for the tort of false imprisonment if: (1) he or she act intending to confine the other or a third person within boundaries fixed by the actor; (2) his or her acts directly or indirectly results in such a confinement of the other; and (3) the other is conscious of the confinement or is harmed by it. *Switzer v. Rivera*, 174 F. Supp. 2d 1097, 1110 (D. Nev. 2001). Plaintiffs specifically allege that Smith falsely imprisoned Osborne because his "freedom of movement was restrained during this time period and he was of the belief that he was not free to leave or resist" and was "detained and imprisoned without cause, consent or privilege." (Compl. ¶¶ 15, 16.) Defendants argue, however, that Osborne consented, therefore providing a complete defense to the tort. (Defs.' Opp. at 10.)

The term "confinement" denotes the "act of imprisoning or restraining someone." *Black's Law Dictionary* (8th ed. 2004). Consent, though maybe not technically a defense to this tort, negates the essential element of confinement. Here, the Court finds that nothing in the evidence indicates that Osborne was confined or restrained by Smith. In fact, as discussed with respect to the previous claims, Osborne not only consented, but requested and actively sought out

the haircut and at no time withdrew his consent. These facts are not in dispute. As a result, summary judgment is appropriate. The Court finds that in light of Osborne's request for Smith to cut his hair, and his consent thereto, he was not falsely imprisoned. Accordingly, summary judgment is granted in favor of Defendants on Plaintiffs' second cause of action.

## V. Negligent Training

Plaintiffs bring their fifth cause of action for negligent training against the School District and Pfeiffer. Nevada recognizes the tort of negligent training. *See Hall v. SSF, Inc.*, 930 P.2d 94, 100 (Nev. 1996). To state a claim for negligence, a plaintiff must show that: "(1) the defendant had a duty to exercise due care towards the plaintiff; (2) the defendants breached the duty; (3) the breach was an actual cause of the plaintiff's injury; (4) the breach was the proximate cause of the injury; and (5) the plaintiff suffered damage." *Perez v. Las Vegas Medical Center*, 805 P.2d 589, 590-91 (1991) (emphasis omitted).

Defendants argue that Plaintiffs have failed to show that the training was the proximate cause of Plaintiffs' alleged injuries. Specifically, they argue that Smith simply had a lapse of judgment, judgment which came not from the training but from years of teaching and common sense. Plaintiffs offer no reply to this argument. Nonetheless, the Court finds that a genuine issue of material fact exists as to whether Smith's lapse in judgment could have been prevented with different or additional training. As a result, summary judgment is denied.

## VI. Intentional Infliction of Emotional Distress

Defendants move for summary judgment on Plaintiffs' claim for intentional infliction of emotional distress. To establish this cause of action, a plaintiff must prove: (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) severe or emotional distress suffered by the plaintiff; and (3) actual or proximate causation. *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998). Here, the Court finds that Smith's conduct in cutting Osborne's hair, despite the absence of Cox's permission and the fact that it may not have been a good haircut, does not rise to the level of

extreme and outrageous conduct as defined by Nevada law, such that a reasonable jury could find in favor of Plaintiffs on this claim.

"[E]xtreme and outrageous conduct is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" *Switzer*, 174 F. Supp. 2d at 1108 (citations omitted). The Court finds that the facts of this case do not rise to the level of indecency to constitute extreme and outrageous conduct. Smith testified that she was trying to help Osborne by cutting his hair because she cared about him and that he was one of her favorite students. Plaintiffs do not counter those admissions or attempt to refute Smith's good intentions. As such, the Court finds that no reasonable jury could find Smith's conduct in cutting Osborne's hair was so indecent or intolerable that it constitutes extreme and outrageous conduct. *Id*.

Accordingly, summary judgment is granted in favor of Defendants on this claim.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Plaintiffs' Motion for Partial Summary Judgment (#18) is DENIED.

IT IS FURTHER ORDERED that Defendants' Countermotion for Partial Summary Judgment (#21) is DENIED in part and GRANTED in part as follows: (1) DENIED as to Plaintiffs' Fourth cause of action; and (2) GRANTED as to Plaintiffs' First, Second, Fifth, Seventh, Eighth and Ninth causes of action.

Dated: January 25, 2007.

_____
ROGER L. HUNT
Chief United States District Judge

AO 72
(Rev. 8/82)